William B. Chase and Estate of Pearl Jane Chase, Deceased, William B. Chase, Executor, et al. [1] v. Commissioner. Chase v. Commissioner
Docket Nos. 57802, 57803, 58810, 67948, 67950, 67951, 67955, 70234, 72700.
United States Tax Court
T.C. Memo 1960-49; 1960 Tax Ct. Memo LEXIS 239; 19 T.C.M. (CCH) 234; T.C.M. (RIA) 60049; March 24, 1960
Robert G. Surridge, Esq., Leonard J. Prekel, Esq., and Harry A. Smith, C.P.A., Dime Building, Detroit, Mich., for the petitioners. Robert B. Pierce, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioners as follows: Docket
Year ended
Petitioner
No.
Dec. 31
Deficiency
1951
$ 3,546.60
57802
1952
7,336.72
William B. Chase and Estate of Pearl Jane
1953
6,160.32
Chase, Deceased, William B. Chase, Executor
70234
1954
1,517.47
1955
2,474.15
57803
1951
905.88
Patricia C. Hartmann
1952
1,856.00
58810
1953
2,314.53
1951
1,187.58
Charles Yarbrough and Mildred Yarbrough
72700
1952
1,997.52
1953
2,680.32
Year ended
Oct. 31
Automotive Gear Company
67948
1953
4,247.69
Shatterproof Glass Corporation
67950
1952
5,782.38
Consolidated Broach Company (formerly Michi-
67951
1952
14,314.37
gan Broach Company)
1953
832.00
Production Tool and Die Company, Inc.
67955
1952
7,480.86
*240 The issues for determination are the correctness of the respondent's action in determining (1) that The William B. Chase Foundation was not exempt from Federal income tax for the fiscal years ended November 30, 1952, through November 30, 1956, and (2) that deductions taken by the petitioners for contributions made thereto during such fiscal years were not allowable. Findings of Fact Some of the facts have been stipulated and are found accordingly. During the taxable years ended December 31, 1951 through 1955, William B. Chase and Pearl Chase, who died December 29, 1958, were husband and wife and resided at Northville, Michigan. For the foregoing taxable years they filed joint income tax returns prepared on the cash basis. Patricia Hartmann, nee Chase, is the daughter of William Chase and Pearl Chase. During the taxable years ended December 31, 1951 through 1953, she was a single person and resided at Northville, Michigan. For the foregoing taxable years she filed income tax returns prepared on the cash basis. Charles Yarbrough and Mildred Yarbrough, sister of Pearl Chase, are and during the taxable years ended December 31, 1951 through 1953, were husband and wife. For the *241 foregoing taxable years they filed joint income tax returns prepared on the cash basis. These petitioners presently reside at Bradenton Beach, Florida. At the time they filed their income tax returns for the foregoing taxable years they maintained a residence in Cincinnati, Ohio. Automotive Gear Company, sometimes hereinafter referred to as Automotive Gear, was a Michigan corporation organized in 1940 and dissolved in 1957 and had its registered office and principal place of business at 4815 Cabot Avenue, Detroit, Michigan. It filed its income tax return for the fiscal year ended October 31, 1953 on an accrual basis. Shatterproof Glass Corporation, sometimes hereinafter referred to as Shatterproof Glass, is a Delaware corporation organized in 1939 and has its registered office and principal place of business at 4815 Cabot Avenue, Detroit. Michigan. It filed its income tax return for the fiscal year ended October 31, 1952, on an accrual basis. Consolidated Broach Company, sometimes hereinafter referred to as Consolidated Broach, formerly was Michigan Broach Company. It is a Michigan corporation organized in 1950 and has its registered office and principal place of business at *242 4815 Cabot Avenue, Detroit, Michigan. It filed its income tax returns for the fiscal years ended October 31, 1952 and October 31, 1953 on an accrual basis. Production Tool and Die Company, Inc., sometimes hereinafter referred to as Production Tool, is a Michigan corporation organized in 1951 and has its registered office and principal place of business at 4815 Cabot Avenue, Detroit, Michigan. It filed its income tax return for the fiscal year ended October 31, 1952 on an accrual basis. The income tax returns for the above-mentioned individual and corporate petitioners for the years stated were filed with the collector, director or district director, as the case may be, for the district of Michigan at Detroit, Michigan. On December 14, 1951, Articles of Incorporation of The William B. Chase Foundation, sometimes hereinafter referred to as the Foundation, were filed with the Michigan Corporation and Securities Commission. The registered office of the Foundation is at 4815 Cabot Avenue, Detroit, Michigan. The Foundation maintains its books and records on the cash receipts and disbursements basis and on the basis of a fiscal year ending November 30. The building at 4815 Cabot Avenue, *243 Detroit, Michigan, which is the registered office address and principal place of business of Shatterproof Glass, Consolidated Broach, Production Tool, and the Foundation and which was the registered office of Automotive Gear until its dissolution in 1957, has been owned at all times during the period from the incorporation of the Foundation on December 14, 1951, until the present, in varying proportions by a group composed of William Chase, Pearl Chase (his wife), William Chase II (their son), Patricia Hartmann (their daughter), Inez Parker (grandmother of William Chase), Mildred Yarbrough (sister of Pearl Chase), Charles Yarbrough (husband of Mildred Yarbrough), and a number of trusts for the benefit of the Chase family, and for convenience has been and is operated as a joint venture under the name of "The Cabot Building, W. B. Chase, Agent." On December 31, 1952, the outstanding capital stock of Shatterproof Glass, consisting of 400,000 shares, was held as follows: No. of shares
William Chase
23,997.59
Pearl Chase
15,672.79
William Chase II
2,548.00
Patricia Hartmann
2,549.63
William Chase, Trustee
235,231.99
The public
120,000.00 The shares held by *244 William Chase, Trustee, are held in a group of trusts for the benefit of the members of the Chase family. At all times from the incorporation of the Foundation to the present, control of Shatterproof Glass has remained in William Chase, individually and as trustee. At all times from the incorporation of the Foundation until the dissolution of Automotive Gear in 1957, all of the outstanding capital stock of Automotive Gear was owned by Shatterproof Glass, and at all times from the incorporation of the Foundation to the present, all of the outstanding capital stock of Consolidated Broach has been owned by Shatterproof Glass. From the incorporation of the Foundation to November 1, 1956, the outstanding capital stock of Production Tool was owned 75 percent by Shatterproof Glass and 25 percent by Charles Yarbrough. Thereafter, and to the present, the entire capital stock of Production Tool has been owned by Shatterproof Glass. Throughout the period from the incorporation of the Foundation, December 14, 1951, to December 29, 1958, the date of the death of Pearl Chase (or in the case of Automotive Gear, until its dissolution on September 30, 1957), the officers and directors of the respective *245 corporations were as follows: Officers
Directors
Shatterproof Glass Corporation
President - William Chase
William Chase
Vice Pres. - Pearl Chase
Pearl Chase, elected 4/8/53
Vice Pres. (Mfg.) - Wm. Duckett, since
Dean Copeland, until 4/8/53
4/8/53
Vice Pres. (Sales) - V. G. Brown,
Minor Owen, until 4/8/53
appointed 9/1/53
Treasurer - E. E. DeFobio
Jerome Bowers, Jr., until 4/8/53
Secretary - V. G. Brown, resigned as Secy.
Fred Dye
9/1/53 and Paul
Croll appointed
Asst. Secy. - C. A. Werthman, resigned
9/1/53, no successor
Automotive Gear Company
President - William Chase
William Chase
Vice Pres. - Pearl Chase
Pearl Chase
Vice Pres. - E. E. DeFobio, since 9/1/53
V. G. Brown
Treasurer - E. E. DeFobio
Secretary - V. G. Brown, resigned 9/1/53
Paul Croll, from 9/1/53
Asst. Secy. - Paul Croll, from 4/8/53 to
9/1/53
Consolidated Broach Company
President - William Chase
William Chase
Vice Pres. - E. E. DeFobio, from 4/1/51 to
E. E. DeFobio, until 4/8/53
4/8/53; also since
9/1/53
Pearl Chase, from 4/8/53
Vice Pres. - Pearl Chase, from 4/8/53
Fred Dye
Treasurer - E. E. DeFobio
Secretary - V. G. Brown, until 9/1/53;
then Paul Croll
Asst. Secy. - Paul Croll, from 6/11/52 to
9/1/53; no successor
Production Tool and Die Company, Inc.
President - William Chase
William Chase
Vice Pres. - Pearl Chase
Pearl Chase
Vice Pres. - E. E. DeFobio, from 9/1/53
V. G. Brown, until 4/8/53
Treasurer - E. E. DeFobio
Fred Dye, from 4/8/53
Secretary - V. G. Brown, until 9/1/53;
then Paul Croll
Asst. Secy. - Paul Croll, from 6/11/52 to
9/1/53
*246 At all times since its incorporation, the trustees, members, and officers of the Foundation have been as follows: Trustees
Members
Officers
William Chase
William Chase
William Chase, Pres. and Treas.
Patricia Hartmann
Patricia Hartmann
Patricia Hartmann, Vice Pres.
Fred Dye
Fred Dye
Fred Dye, Secretary
Fred Dye is a member of a firm of attorneys who are attorneys for the Foundation and for the other corporations heretofore mentioned. Prior to or about 1949 or 1950, Chase did not have a favorable attitude toward charities, particularly organized charities, because in his opinion too little reached the beneficiary after administration expenses had been provided for. His wife and their daughter Patricia had a different attitude and opinion respecting charities and many of the family conversations and discussions revolved about the subject, including among others, the topics of orphanages, hospitals, crippled children, education, and grants to universities and schools. In June 1951, Patricia graduated from Oberlin College with a B.A. degree in psychology. Among the subjects she studied at Oberlin were social problems from which she obtained concrete ideas *247 as to charitable giving. Following her graduation and return home there were further family conversations and discussions about charities and charitable giving. Beginning about 1949, Chase at intervals and in a general way discussed with Dye the matter of establishing a foundation or organization through which to provide funds for the construction of a hospital or a wing of a hospital or to provide funds for the construction and operation of an orphanage or home for children. Although he had not decided upon any specific matter or program he wished the Foundation to undertake or engage in, Chase caused Dye to incorporate the Foundation as a nonstock and nonprofit corporation for the following purpose or purposes as set out in the articles of incorporation: "To receive and administer funds for educational and charitable purposes, all for the public welfare, and for no other purposes, and to that end to take and hold by bequest, devise, gift, purchase or lease, either absolutely or in trust for such objects and purposes, or any of them any property, real, personal, or mixed without limitation as to amount or value, except such limitation, if any, as may be imposed by law; to sell, *248 convey, and dispose of any such property and to invest and reinvest the principal thereof in accordance with the laws of the State of Michigan governing authorized investments for trustees, and to deal with and expend the income therefrom for any of the beforementioned purposes, without limitation, except such limitations, if any, as may be contained in the instrument under which such property is received; to receive any property, real, personal or mixed, in trust under the terms of any will, deed of trust, or other trust instrument for the foregoing purposes or any of them (but for no other purposes), and in administering the same to carry out the directions and exercise the powers contained in the trust instrument under which the property is received including the expenditure of the principal, as well as the income, for one or more of such purposes, if authorized or directed in the trust instrument under which it is received; to receive, take title to, hold, and use the proceeds and income of stocks, bonds, obligations, or other securities of any corporation or corporations, domestic or foreign, but only for the foregoing purposes, or some of them; and, in general, to exercise any, *249 all and every power for which a non-profit corporation known as a foundation, organized under the provisions of the Michigan General Corporation Act for educational and charitable purposes, all for the public welfare, can be authorized to exercise, but not any other power. No part of the activities of this corporation shall be the carrying on of propaganda or otherwise attempting to influence legislation." The articles of incorporation provided that the Foundation is to be financed by contributions, gifts, devises, and bequests to it of funds and property, absolutely or in trust, for its purposes as therein set forth and for no other purposes; that the term of the corporate existence of the Foundation is perpetual; and that the incorporators named therein, William Chase, Patricia Hartmann, and Fred Dye, should, following incorporation, be known as members of the Foundation and their successors should also be known as members. The articles of incorporation contained the following respecting members and trustees of and membership in the Foundation: "The number of members of this corporation shall be not less than three (3) nor more than seven (7) as may be fixed from time to time *250 by the members. Additional members, within the limits herein imposed, may be elected at any annual or special meeting of members held for that purpose, provided, that such additional members shall first be proposed for membership by a majority of the Board of Trustees, or, in case the number of persons comprising the Board of Trustees should, for the time being, be reduced to fewer than three (3) through death, resignation or incapacity, such additional members may be proposed by one (1) of the remaining trustees. The number of trustees shall not be less than three (3) nor more than fifteen (15). Trustees may be, but shall not be required to be members. The members, by majority vote, may determine from time to time the number of such trustees within such limitations and fix their term of office. Trustees shall be elected by the members and the members may provide in the By-Laws the method of election of trustees and their terms of office. "Membership or any interest in this corporation shall not be assignable inter vivos by any member nor shall membership or any interest in this corporation pass to any personal representative, heir, devisee or legatee of a member. A member's membership *251 shall cease upon his death or resignation or upon adoption at a lawful meeting of members of a resolution removing a member by the vote or written assent, incorporated in the minutes of the meeting, of not less than two-thirds (2/3) of all the members." Following the incorporation of the Foundation, Chase made a study of the subjects of philanthropic giving and social welfare and obtained from various top executive and administrative employees of Shatterproof Glass and its subsidiary companies suggestions as to the most appropriate purposes for which the Foundation should make its contributions. From the information obtained from the foregoing sources, five projects, namely, a hospital, an orphanage, a research project, an educational program, and a social welfare program, were selected for investigation and consideration. Since it was found that the construction, equipping, and endowing of a hospital or an orphanage would require more money than the Foundation in all probability would have available, it was decided that consideration of those projects should be discontinued. After investigation of a research project, it was found that the sums required would be large. In view of *252 that and since no one connected with the Foundation had any knowledge or experience in the field of scientific research, and since it would be necessary to leave the direction of the project to someone employed for that purpose, consideration of such a project was abandoned. High on the list of suggestions submitted by top executive and administrative employees was an educational program, which was next considered. It was decided that further study should be given to such a program which it was considered constituted an appropriate purpose to which the Foundation could make contributions. Factors underlying that conclusion were that the size of such a program could be adapted to the amount of funds available to the Foundation; that such a program would not require the accumulation by the Foundation of its funds for an indefinite period; that, because of the availability of existing educational institutions, the administration of such a program would require only a small staff; and that those connected with the Foundation were familiar with problems involved in acquiring an education. A report along the foregoing lines was made by Chase to the trustees of the Foundation at their annual *253 meeting on March 2, 1953. At that meeting Chase appointed himself and Dye as a committee to study further suitable objectives for expenditure of the funds of the Foundation. During 1953 the trustees of the Foundation agreed that an educational program should be fully investigated and that a plan for the execution of such a program should be prepared as soon as they considered that sufficient information and funds had become available to make such a program possible. To that end, Chase and Dye obtained and examined literature on educational foundations. They also considered the educational programs of certain corporations and the programs for development, scholarships, and fellowships of several colleges and universities. As a result and with the view that some scholarships and loans be awarded by the Foundation in 1955, Chase and Dye prepared a proposed scholarship and loan program for the Foundation. At the annual meeting of the trustees of the Foundation on March 1, 1954, the proposed program was adopted as the scholarship and loan program of the Foundation and the latter's administrative officers were directed "to proceed to carry into effect such program within the resources *254 of" the Foundation. For its administration, the program provided for a committee designated the scholarship committee, consisting of five members selected by the Foundation's trustees. The scholarship committee was charged with the responsibility of selecting the schools and courses from which eligible students might select their program; the selection of students to receive scholarships or loans; the determination of the amount of the scholarship or the loan each selected student would receive, and the terms of repayment in the case of loans; and the determination as to whether scholarships or loans would be extended from year to year to the students selected until their graduation or other completion of the course or courses selected. The program provided that those eligible to apply for scholarships or loans were the natural, adopted or stepchildren of employees of Shatterproof Glass, Michigan Broach, and their subsidiaries and affiliates, who had been on the payroll with continuous service for a minimum period of 3 years and promising young employees of the foregoing companies who had been employed continuously for one year. Candidates for scholarships were required to be *255 high school graduates or in some other manner establish that they were capable of pursuing the course of study they had selected. Only students who evidenced superiority in scholastic standing, manifested qualities of character, loyalty, citizenship, ambition, self-reliance, leadership, integrity, work-application, and the like were to be selected for scholarships. Scholarships were to constitute gifts to those to whom they were awarded. Loans were to be made available to students not wishing to accept scholarships or whose qualifications were excellent but not superior to those selected for scholarships. The amount of scholarship or loan assistance to be given selected students was to be determined by the scholarship committee in accordance with the circumstances surrounding each individual student and was dependent upon the school attended, the length of the courses selected, financial need, and other factors deemed relevant by the committee. The scholarship or loan money awarded by the Foundation was to be paid directly to the student as an effort to teach each student financial responsibility. The program provided that the Foundation should select a list of schools from which *256 selected students would choose the school they wished to attend and would themselves make application for admission thereto. A school not selected by the Foundation might be substituted upon the student's request and with the approval of the Foundation. Among the schools from which students were to make selections were colleges, universities, trade and business schools, and schools (evening, stenographic or occupational) offering courses in such special fields as accounting, shorthand, typing, etc. Assistance for attending business schools and schools in special fields was to be open to both boys and girls, while assistance for attending a college or university was to be available mainly to boys but, in exceptional cases where a career was indicated, girls were to be considered. The program provided that scholarships or loans might be awarded to students selecting complete courses or majors in the following: Accounting
General Clerical
Advertising
Industrial Psychology
Bookkeeping
Industrial Relations
Business Administra-
Industry Management
tion
Junior Accounting
Comptometry
Marketing
Dictaphone
Office Machines
Economics
Personnel
Engineering
Secretarial
(a) Electrical
Switchboard & Recep-
(b) Industrial
tionist
(c) Mechanical
Taxes
Export and Import
Traffic
General Business
Typing
Courses
*257 An award made to a child of an employee was not to be interrupted because a parent ceased to be an employee of Shatterproof Glass, Michigan Broach, or their subsidiaries and affiliates, nor was the child of an employee who had been awarded a scholarship or loan required to seek employment with or to enter the employment of any of the foregoing companies. During 1954 several changes in the Foundation's scholarship and loan program were made with respect to persons eligible for scholarships or loans, the membership of the scholarship committee, and certain internal administrative procedures. The groups eligible to apply for scholarships or loans were enlarged to include deserving outsiders who could establish that they had completed the required amount of schooling to compete with the other students. The admission to competition of such outsiders was to be at the discretion of the scholarship committee. The scholarship committee also was enlarged to seven members. Another change required that the scholarship committee's selections of applicants for scholarships or loans should be submitted by the committee to the trustees of the Foundation for approval. Except as otherwise indicated, *258 the membership of the scholarship committee from its inception in March 1954 has consisted of the following persons: Name
Employment
Viola G. Brown
Vice President (Sales),
Shatterproof Glass
E. E. DeFobio
Treasurer, Shatterproof
Glass and its subsidiaries
William Duckett
Vice President (Mfg.),
Shatterproof Glass
Fred Dye
Attorney
J. Ronald Gee
President, Michigan
Broach
H. H. Handorf
Physician
Patricia Hartmann
Employee, Shatterproof
Glass
Marybelle Boyle [1]
Senior Technical Adminis-
trative Assistant, Divi-
sion of Student Person-
nel, Wayne State Uni-
versity
H. H. Handorf is a personal friend of Chase, owns 100 shares of stock in Shatterproof Glass, and has a son who is employed by that corporation. Handorf never attended any meetings of the scholarship committee, and although he expressed opinions as to whether an award should be made to applicants, he never expressed an opinion as to the amount of such award. Except on one occasion, Fred Dye never has attended any meetings of the scholarship committee. He never saw any of the applicants and his opinions, as to whether awards should be made *259 and, if so, the amounts thereof, were based on information submitted to him by Patricia Hartmann or someone else acting for the Foundation. E. E. DeFobio is one of the key supervisors who was consulted by Chase when the Foundation's possible objectives and programs were being considered. He has attended most of the meetings of the scholarship committee. The Foundation caused to be printed and on December 27, 1954, distributed to the employees of Shatterproof Glass, its subsidiaries and affiliates, a booklet prepared by Patricia Hartmann and entitled "The William B. Chase Foundation Educational Assistance Program." The booklet contained information respecting, among other things, the aims and purposes of the Foundation, those eligible to apply for awards, basis and procedure for selecting award winners, schools approved by the Foundation, and the courses which might be pursued under the Foundation's program, the amount of and continuance of scholarship awards, requirements of award winners, and the procedure to be followed in applying for awards. About the beginning of 1956 the trustees of the Foundation decided that the scope of the scholarship and loan program should be expanded *260 in order to make more employees and children of employees eligible for awards. Accordingly, the minimum service limit for employees whose children wished to apply for an award was reduced from 3 years to 1 year and the minimum service limit for employees wishing to apply for an award was lowered from 1 year to "being on the active payroll," which meant eligibility after 60 or 90 days of employment. In addition, the list of schools approved by the Foundation was enlarged to include any midwestern school, college, or university accredited by the College Entrance Examination Board or other recognized accrediting agency. In July 1956, the booklet printed in 1954 and distributed on December 27 of that year was revised and, as so revised, reflected the lowered minimum service requirements and the enlarged group of schools approved by the Foundation. On April 8, 1957, the respondent ruled that awards made by the Foundation to employees of companies participating in the Foundation were in the nature of compensation for services rendered and were an aid to the companies themselves; that, accordingly, the Foundation was not operated exclusively for exempt purposes; and that, therefore, it *261 was not exempt under section 501(c)(3) of the Internal Revenue Code of 1954 from Federal income tax. Following receipt of the foregoing ruling of respondent and following receipt from the Foundation's tax counsel of a latter dated August 25, 1957, and in an attempt to remove what the respondent had indicated was the basis upon which he rested his ruling denying exemption to the Foundation, the trustees of the Foundation at a special meeting held on September 16, 1957, adopted the following resolution: "That the Scholarship and Loan Program set forth in the Report to Trustees for the year 1953, and adopted by the Trustees at a meeting held March 1, 1954 as subsequently amended by resolutions of the Trustees March 7, 1955, be amended as of March 1, 1954, to read as follows: * * *" Then followed a statement of the provisions of the program as so amended. Among such provisions was that relating to eligibility which limited those eligible to apply for scholarships or loans to the following: "Natural, adopted or stepchildren of employees who have been on the payroll with continuous service for a minimum period of three years. Also deserving "outsiders" who can *262 present suitable proof that they have completed the required amount of schooling to compete with the other applicants for awards, at the discretion of the Scholarship Committee." Subsequently, a third edition of the booklet entitled "The William B. Chase Foundation Educational Assistance Program" was issued. In this edition employees of the participating corporations were excluded from the groups eligible to apply to the Foundation for scholarships or loans. In the first edition (1954) and second edition (1956) of the booklet the following were listed as "Participating Companies": Automotive Gear Company
(a)
Curvlite Glass Company
(b)
Michigan Broach Corporation
(c)
Production Broaching Corporation
(d)
Production Tool & Die Company
(e)
Shatterproof Glass Corporation
Soundfilm Studios, Incorporated
(f)
W. B. Chase, Agent
(g)
(a) A 100 percent subsidiary of Shatterproof Glass Corporation, dissolved in September 1957, and name omitted from the second edition of the booklet. (b) An operating division of Shatterproof Glass Corporation. (c) A new corporation, incorporated in October 1954. (d) A 100 percent subsidiary of Shatterproof Glass Corporation. *263 (e) A 75 percent subsidiary of Shatterproof Glass Corporation until November 1, 1956, and thereafter a 100 percent subsidiary. (f) Owned 100 percent by Chase family trusts until an undisclosed date in 1956 when a nonrelative, James E. MacLane, acquired a 49 percent interest. Name subsequently changed and now is Film Associates of Michigan, Incorporated. (g) Joint venture operating the building at 4815 Cabot Avenue, Detroit, Michigan. In the third edition of the above-mentioned booklet the following were listed as "Participating Companies": Curvlite Glass Company, Michigan Broach Corporation, Shatterproof Glass Corporation, Film Associates of Michigan, Incorporated, W. B. Chase, Agent During 1955 through 1957 the following companies or organizations had the indicated number of employees: No. of Employees
1955
1956
1957
Automotive Gear Company
37
none
none
Michigan Broach Corporation
50
Production Tool & Die Company, Inc.
18
none
none
Shatterproof Glass Corporation
349
367
375
W. B. Chase, Agent - Cabot
Building
23
22
36
Production Broaching Corporation
24
10
none
Total
501
399
411
Beginning with the distribution *264 on December 27, 1954, of the booklet entitled "The William B. Chase Foundation Educational Assistance Program" and continuing through each of the following years, prospective applicants for scholarships or loans have been made aware of the program by letters sent to the home address of all employees of the participating companies, by bulletin board posters, notices attached to pay checks, and by notices and articles in "The Round-Up," the internal house publication of Shatterproof Glass. Although in some of the foregoing matter there was an indication that in making awards preference would be given to eligible employees over eligible children of employees, there was in fact no preference made in making awards. In addition to eligibility, the basic requirements for making awards were scholastic ability, character, and financial need. The children of employees usually applied for awards for college courses for which College Board Examinations were a prerequisite, and employees usually applied for awards for courses for which such examinations were not required. However, the Foundation gave certain intelligence, interest, and comprehension tests to all applicants for awards except those *265 with previous college training. The following is a list of the employees of participating companies or organizations who received scholarship awards from the Foundation, the employer company, position of the employee, period of employment, school attended (except International Accountants School which offered correspondence courses) course taken, dates of payment of awards by the Foundation, amounts, and totals for the period December 14, 1951, through the Foundation's fiscal year ended November 30, 1957: Period of Employment
Employee
Position
From
To
School
SHATTERPROOF GLASS CORP.
1. Jorge Carrera
Export Manager
9-16-53
Present
University
of Detroit
2. Barbara Collins
Order Clerk
1-16-55
Present
Comptomete
r School,
Detroit
3. George Jaeger
Inspector
4-18-55
Present
Cass Night
School
4. John Loveley
Traffic Mgr.
6- 1-50
Present
Traffic
Club of
Detroit
5. Robert McFadden
Asst. Warehouse Mgr.
2- 8-54
9-12-58
University
of Detroit
(laid off)
6. Robert Miltimore
Accountant
10-24-55
7-25-57
Detroit
Institute
of
(quit - another job)
Technology
CURVLITE GLASS COMPANY (Division of Shatterproof)
7. Ernest Begley
Basket Unloader
8-23-56
Present
Cass Night
School
8. Julius Bendy
Basket Unloader
4- 1-53
Present
Southw'n
Night
School
9. Frank Hogan
Asst. Traffic Mgr.
10-16-50
7-18-58
College of
Advanced
(laid off)
Traffic
10. Arne Koch
Asst. Prod. Cont. Mgr.
9-19-55
Present
Wayne
State
Univ.
11. Barbara Starkolit
Warehouse Clerk
7- 5-55
Present
Fordson
High
School
PRODUCTION BROACHING CORPORATION
12. Francis
Accountant
8-29-50
Present
Int'l
Lesperance
Accountant
s Sch.
W. B. CHASE, AGENT (Cabot Building)
13. Harold Hill
Accountant
1- 2-56
4-2-58
Walsh
Institute
(quit - another job)
14. William Hopkinson
Electrician
9- 2-48
Present
Cass Night
School
Total to
all
employees
*266 Date of
Employee
Course
Payment
Amou
Total
nt
SHATTERPROOF GLASS CORP.
1. Jorge Carrera
Adv. Business Export
8-10-55
$ 70
2- 3-56
70
$ 140
2. Barbara Collins
Comptometry
5-23-56
100
100
3. George Jaeger
Mechanical Drawing
7- 2-56
24
24
4. John Loveley
Interstate Commerce
8-10-55
45
45
Law
5. Robert McFadden
Adv. Business
8- 9-55
70
2- 3-56
70
8-20-56
70
1-22-57
70
280
6. Robert Miltimore
Accounting
8-20-56
54
54
$ 643
CURVLITE GLASS COMPANY (Division of Shatterproof)
7. Ernest Begley
Electrical Wiring
5- 2-57
$ 15
$ 15
8. Julius Bendy
Mechanical Drawing
4-10-57
12
12
9. Frank Hogan
Traffic Management
9-20-55
45
2- 3-56
45
8-20-56
90
180
10. Arne Koch
Industrial Safety
2-10-56
26
26
11. Barbara Starkolit
Typing
3-12-56
30
30
$ 263
PRODUCTION BROACHING CORPORATION
12. Francis
Accounting
7-13-55
$185
$ 185
Lesperance
W. B. CHASE, AGENT (Cabot Building)
13. Harold Hill
Federal Taxation
9-13-56
$ 53
$ 53
14. William Hopkinson
Industrial
10-24-55
15
Electronics
1- 5-56
6
3-20-56
12
8-20-56
12
8-20-57
16
61
$ 114
$1,205
*267 At the special meeting of the trustees on September 16, 1957, referred to above, the following resolution was adopted: "RESOLVED, that the proper officers of the Foundation be instructed to collect, as reimbursement for disbursements heretofore made on behalf of employees the following amounts from the indicated companies and to include such reimbursed amounts with the general funds of the Foundation, to be used for the purposes permitted under the Scholarship and Loan Program as retroactively amended: Amount
to be
collected
as reim-
"Company
bursement
Production Broaching Corp.
$ 185.00
Shatterproof Glass Corp.
643.00
Cabot Building
114.00
Curvlite Division
263.00
Total
$1,205.00"
Following the adoption of the foregoing resolution and during the Foundation's fiscal year ended November 30, 1958, the corporations last above listed reimbursed the Foundation the total of $1,205 which the Foundation had granted to their employees. The following is a list of the children of employees of participating companies who received scholarship awards from the Foundation, the name of the parent, parent's position, and employer, parent's period of employment, *268 the school attended by child, courses taken, dates when awards were paid, amount, and totals for the period December 14, 1951, through the Foundation's fiscal year ended November 30, 1957, together with the employment record of the children: Period of
employment
Child
Name, position,
From
To
School
Course
and employer
Biloskurska,
Melanie
4-29-53
Present
Wayne
Liberal Arts
Biloskurska,
Conveyor
Oresta
assembler at
University
and
Shatterproof
Business
Bugola,
Al Milankov,
1-16-49
4-30-56
University
Business
stepfather, died
Richard
4-30-56,
(died)
of
Administration
storeroom supvr.
at
Automotive Gear
1949
1957
Michigan
and Jose-
phine Milankov,
(irregularly)
conveyor as-
sembler,
8- 2-57
11- 8-57
Automotive Gear
and Shatterproof
Lipinski,
Veronika
9- 5-51
Present
Chadsey
Typing
Lipinski, Machine
Laurentine
glass cutter at
Summer School
and
Shatterproof
and
Bookkeeping
Marygrove
College
Korby,
Jane Korby,
11- 9-54
Present
University
Engineering
General clerk at
Maryanne
Shatterproof
of
Detroit
Patton,
Ross E. Patton,
5-29-47
Present
University
Languages and
leader and set-
Mary Anne
up man at
of
Industrial
Shatterproof
Michigan
Psychology
Schweitzer,
Margaret
7-10-50
Present
Highland
Secretarial
Schweitzer
Conveyor
Ilse
assembler at
Park
Science
Shatterproof
Junior
College
Sidelko,
Theresa Cardenas,
1-16-51
Present
St. Vincent's
Engineering
Conveyor
William
assembler at
College
Shatterproof
and
Notre Dame
University
*269 Part-time employment
Child
Date
Amount
Total
Period
Employer
Biloskurska,
8- 9-55
$125
Oresta
2- 3-56
125
6-21-55 to 9-16-55
Shatterproof
(Clerk-
8-20-56
130
typist)
1-22-57
130
8-20-57
135
$ 645
Bugola, Richard
8- 9-55
250
6-12-56 to 9-15-56
Cabot Bldg.
(Laborer)
2- 6-56
250
6-11-57 to 1-31-58
8-20-56
250
6-11-58 to 7- 2-58
Shatterproof
(Furnace
loader)
1-22-57
250
1,000
7- 7-58 to 7-11-58
7-30-58 to 8- 6-58
Lipinski,
7-13-55
35
6-17-57 to 8-15-57
Shatterproof
Laurentine
(Proof-
reader)
8-20-57
250
285
6- 9-58 to 8-29-58
Korby, Maryanne
8-20-56
225
6-17-57 to 9-15-57
Shatterproof
(Clerk-
typist)
1-22-57
225
6- 9-58 to 9- 5-58
8-20-57
250
700
Patton, Mary
8- 9-55
250
No part-time work.
Anne
3- 3-56
250
8-20-56
250
1-22-57
250
8-20-57
175
1,175
Schweitzer, Ilse
8-20-56
125
1-27-58 to 4- 3-58
Shatterproof
(Clerk-
1-22-57
125
typist)
8-20-57
225
475
Sidelko, William
8-9-55
250
6- 6-56 to 8-21-56
Cabot Bldg.
(Laborer)
2- 3-56
250
6-10-57 to 9-13-57
Shatterproof
(Detail
draftsman)
8-20-56
250
6- 9-58 to 9-15-58
1-22-57
250
8-20-57
250
1,250
Total to all
$5,530
children of
employees
*270 Because of the lack of a determination that it is exempt from Federal income tax and its failure, by reason of the lack of such a determination, to receive some contributions or donations which it otherwise might have received, the Foundation has not engaged in any program to inform "outsiders," persons other than employees of and children of employees of the participating companies, of their eligibility to apply for awards and has not solicited them to apply for awards. As a consequence, the Foundation has not received any applications for awards from and has not made any awards to "outsiders." In November and December 1956, the Foundation sponsored an 8 weeks' English Language course for foreign-born employees of the participating companies and bore the cost of the instruction, $160. Classes were held once a week after working hours and attendance was voluntary. Ten persons attended the course, six from Shatterproof Glass, three from Cabot Building, and one from Curvlite Division of Shatterproof. Five of the foregoing ten persons attended all eight of the classes, and their tests following completion of the course disclosed noticeable improvement. The course was given under the *271 direction of a language specialist from the Detroit Board of Education. The English Language course has not been repeated by the Foundation because of the respondent's ruling of April 8, 1957, referred to above. Beginning in 1955, funds of the Foundation to the extent of approximately $100,000 were invested in bonds and debentures with comparatively short periods until maturity dates and at successively higher interest rates as follows: Date
Date of
Type of Investment
Acquired
Disposition
$100,000 Federal Intermediate Credit Bank - 2.55%
12/23/55
6/ 1/56
Bonds - Maturity Date 6/1/56
$100,000 Federal Intermediate Credit Bank - 3.05%
6/ 4/56
10/ 1/56
Bonds - Maturity Date 10/1/56
$100,000 Central Bank & Banks for Cooperatives - 3.50%
10/ 8/56
4/ 1/57
Debentures - Maturity Date 4/1/57
$100,000 Central Bank & Banks for Cooperatives - 3.75%
4/ 5/57
10/15/57
Debentures - Maturity Date 10/15/57
$100,000 Federal National Mortgage Association - 4.05%
10/21/57
4/10/58
Debentures - Maturity Date 4/10/58
The following is a statement of the receipts and disbursements of the Foundation for the fiscal years ended November 30. 1952, through November 30, 1958, with *272 the total thereof for such years: Year
Year
Year
Year
ended
ended
ended
ended
11/30/52
11/30/53
11/30/54
11/30/55
Receipts
Contributions
$74,300.00
$20,000.00 [1]
$31,500.00
$ 3,000.00
Gain on sale of securities
1,475.94
Dividends
166.50
Interest
Reimbursement for funds
disbursed for scholarships
previously awarded to
employees
Total
$74,300.00
$20,000.00
$33,142.44
$ 3,000.00
Disbursements
Scholarship awards paid: To employees of
$ 430.00
participating companies
To children of employees
910.00
Total
$ 1,340.00
Charitable contributions
$ 155.00
$ 55.00
$ 45.00
Operating expenses: Legal and professional
548.27
200.00
235.00
fees - Dye and Anderson
Harry A. Smith
55.00
75.00
$ 110.00
Stenographic and clerical
2,239.79
salaries
Office rent
167.89
Scholarship award expense
125.08
Gratuities to scholarship
committee member
Teachers and instructors
Postage
47.99
General expenses: Printing, Booklets and
306.60
Forms, Tests, etc.
Stationery
90.13
174.38
American Foundation
15.00
7.00
Information Service
College Entrance
5.75
36.00
Examination Board
Educational Testing
17.00
Service
Textbooks
31.00
Travel expense
Brokers' commissions
Taxes
2.00
2.00
2.00
2.00
Federal income tax-year
ended 11/30/54
Total
$ 720.27
$ 319.00
$ 452.88
$ 4,597.73
*273 Year
Year
Year
ended
ended
ended
11/30/56
11/30/57
11/30/58
Total
Receipts
Contributions
$ 4,000.00
$132,800.00
Gain on sale of securities
165.65
$ 218.75
1,860.34
Dividends
166.50
Interest
2,131.67
$ 2,068.22
3,600.00
7,799.89
Reimbursement for funds
1,205.00
1,205.00
disbursed for scholarships
previously awarded to
employees
Total
$ 6,297.32
$ 2,068.22
$ 5,023.75
$143,831.73
Disbursements
Scholarship awards paid: To employees of
$ 662.00
$ 113.00
$ 1,205.00
participating companies
To children of employees
2,105.00
2,515.00
$ 3,155.00
8,685.00
Total
$ 2,767.00
$ 2,628.00
$ 3,155.00
$ 9,890.00
Charitable contributions
$ 50.00
$ 10.00
$ 110.00
$ 425.00
Operating expenses: Legal and professional
983.27
fees - Dye and Anderson
Harry A. Smith
400.00
710.00
250.00
1,600.00
Stenographic and clerical
1,330.28
1,435.15
1,088.94
6,094.16
salaries
Office rent
411.88
426.25
433.00
1,439.02
Scholarship award expense
207.45
153.72
142.32
628.57
Gratuities to scholarship
35.00
35.00
35.00
105.00
committee member
Teachers and instructors
80.00
80.00
160.00
Postage
47.99
General expenses: Printing, Booklets and
275.01
308.97
890.58
Forms, Tests, etc.
Stationery
122.35
386.86
American Foundation
22.00
Information Service
College Entrance
7.00
9.00
14.00
71.75
Examination Board
Educational Testing
13.50
13.50
44.00
Service
Textbooks
24.30
6.00
61.30
Travel expense
20.99
20.99
Brokers' commissions
31.25
31.25
Taxes
2.00
2.00
8.00
20.00
Federal income tax-year
475.70
475.70
ended 11/30/54
Total
$ 6,187.97
$ 5,560.86
$ 5,558.73
$ 23,397.44
*274 The amounts shown in the above statement as having been disbursed as "Charitable Contributions" for the respective years were composed of the following items: Year
Year
Year
Year
ended
ended
ended
ended
11/30/52
11/30/53
11/30/54
11/30/55
Santa Maria Catholic Church
$ 50.00
Boy Scouts of America
20.00
$20.00
$20.00
National Jewish Hospital
10.00
Cranbrook School Memorial Scholarship
25.00
Fund
United Foundation
25.00
25.00
Kingswood School - Cranbrook
25.00
Scholarship Program
First Presbyterian Church
25.00
Wooden Church Crusade
10.00
Readers Digest Fund for Blind
Reichelieu Boys Club
Kiwanis Club Charity Fund
Hillsdale College
Total
$155.00
$55.00
45.00
Year
Year
Year
ended
ended
ended
11/30/56
11/30/57
11/30/58
Total
Santa Maria Catholic Church
$ 50.00
Boy Scouts of America
60.00
National Jewish Hospital
10.00
Cranbrook School Memorial Scholarship
25.00
Fund
United Foundation
$25.00
75.00
Kingswood School - Cranbrook
25.00
Scholarship Program
First Presbyterian Church
25.00
Wooden Church Crusade
10.00
Readers Digest Fund for Blind
25.00
25.00
Reichelieu Boys Club
$10.00
10.00
Kiwanis Club Charity Fund
$ 10.00
10.00
Hillsdale College
100.00
100.00
Total
$50.00
$10.00
$110.00
$425.00
*275 The amount of $2,239.79 shown in the above statement of receipts and expenditures as having been disbursed as "Stenographic and clerical salaries" for the fiscal year ended November 30, 1955, represented disbursements to Shatterproof Glass for services rendered by employees in its typing pool. The Foundation was invoiced only for the time spent by employees and at the rate per hour paid them by Shatterproof. During the year Patricia Hartmann was employed in Shatterproof's typing pool and $741.60 of the above amount of $2,239.79 was for 509 hours spent by her on matters of the Foundation and the remainder of $1,498.19 was for 1,016 hours spent on matters of the Foundation by other employees in the typing pool. The Foundation's balance sheets at the end of the years ended November 30, 1952, through November 30, 1958, were as follows: Assets
1952
1953
1954
1955
Cash
$73,579.73
$89,047.23
$125,950.29
$124,352.56
Savings deposits
Accounts receivable: Federal income tax - For
the year ended 11/30/54 -
Paid under protest
Securities
4,213.50
Total assets
$73,579.73
$93,260.73
$125,950.29
$124,352.56
Liabilities Net worth
$73,579.73
$93,260.73
$125,950.29
$124,352.56
*276 Assets
1956
1957
1958
Cash
$ 24,179.97
$ 21,249.52
$ 20,464.54
Savings deposits
100,000.00
Accounts receivable: Federal income tax - For
475.70
475.70
475.70
the year ended 11/30/54 -
Paid under protest
Securities
100,281.94
99,750.00
Total assets
$124,937.61
$121,475.22
$120,940.24
Liabilities Net worth
$124,937.61
$121,475.22
$120,940.24
The Foundation has never engaged in carrying on propaganda or otherwise attempting to influence legislation. During the indicated years the following individual petitioners made contributions to the Foundation in the amounts shown and deducted such amounts as contributions in their income tax returns for the respective years: Year ended
William Chase and
Patricia
Charles Yarbrough and
Dec. 31
Pearl Chase
Hartmann
Mildred Yarbrough
1951
$ 6,600.00
$ 2,500.00
$ 3,600.00
1952
10,795.88
3,711.05
5,000.00
1953
13,000.00
4,500.00
6,000.00
1954
3,000.00
1955
4,000.00
Total
$37,395.88
$10,711.05
$14,600.00
During their fiscal year ended October 31, 1952, the following corporate petitioners made contributions to the Foundation in the amounts shown *277 and deducted such amounts as contributions in their income tax returns for that taxable year: Shatterproof Glass Corp.
$12,000
Consolidated Broach Co.
31,000
Production Tool and Die Co.,
Inc.
17,000
In their income tax returns for their fiscal year ended October 31, 1953, Automotive Gear Company and Consolidated Broach Company deducted as contributions made in that taxable year to the Foundation the amounts of $2,400 and $1,600, respectively. The foregoing amounts were not paid during the fiscal year ended October 31, 1953, but the amount in each case was paid by check dated January 14, 1954. In determining all the deficiencies here involved, except those in the case of Charles Yarbrough and Mildred Yarbrough, the respondent held that the amounts deducted by the individual and corporate petitioners in their income tax returns for the respective years as contributions to the Foundation were not deductible and disallowed them without further explanation. In determining the deficiencies against Charles Yarbrough and Mildred Yarbrough, the respondent disallowed the deductions taken by them as contributions to the Foundation with the explanation that the "Foundation *278 does not qualify as an organization the contributions to which are deductible under the provisions of section 23(o) of the Internal Revenue Code of 1939." Opinion The first question for determination is whether The William B. Chase Foundation was exempt from income tax during its fiscal years ended November 30, 1952, and November 30, 1953, pursuant to section 101(6) of the Internal Revenue Code of 1939, and during its fiscal years ended November 30, 1954, through November 30, 1956, pursuant to section 501(c)(3) of the Internal Revenue Code of 1954, as being a corporation or foundation organized and operated exclusively for charitable or educational purposes, no part of the net earnings of which inured to the benefit of any private shareholder or individual and no substantial part of the activities of which consisted of attempting to influence legislation. The petitioners take the position that the record establishes that the Foundation was so organized and that during the years in question was so operated. The Foundation was organized under the laws of Michigan as a nonstock and nonprofit corporation, with perpetual existence, for the purpose, as stated *279 in its articles of incorporation, of receiving and administering funds for educational and charitable purposes. Although it does not have stockholders or shareholders, it has memberships, the holders of which elect its trustees. At all times since the incorporation of the Foundation on December 14, 1951, William Chase has been a member of the corporation, its president and treasurer, and one of its trustees; Patricia Hartmann has been a member of the corporation, its vice president, and one of its trustees; and Fred Dye has been the remaining member of the corporation, its secretary, and its remaining trustee. The respondent takes the position that the Foundation was not organized and operated for charitable or educational purposes but for business purposes. In support of his position, he contends that the Foundation, though in guise a charitable foundation, was in reality an instrumentality to increase the morale of the employees of the participating companies which were controlled by Chase and to increase the interest of the employees in the business of such companies. The respondent also urges that the Foundation's program followed an employment pattern in that, under the program, *280 awards were made only to employees and children of employees of companies controlled by Chase and that, accordingly, the awards were in the nature of compensation to the employees and were a benefit to the business of the companies. The respondent further urges that for a foundation to be organized and operated exclusively for charitable or educational purposes, its corpus or income must be extended without discrimination to all members of the community which it serves and not be limited to the employees and children of employees of a small group of companies as was the case here. We are unable to sustain the respondent's position that the Foundation was organized and operated for business purposes. The Foundation did not engage in the conduct of any business enterprise but instead devoted its activities solely to matters relating to its own affairs. The Foundation's program provided that scholarships were to constitute gifts to those to whom they were awarded, and the evidence shows that in approving the scholarship awards it was not the intention of the trustees that the awards should constitute compensation for services or that they should constitute an inducement for an employee *281 to remain in the service of the company by which he was employed. Some employees to whom scholarship awards were made subsequently left the employment of their employers and some did not. Apparently the existence of the Foundation and its program had little if any effect on the employee turnover of the participating companies. With one exception, all of the children of employees who received scholarship awards obtained part-time employment during school vacation periods with either Shatterproof Glass or Cabot Building. The evidence shows that the jobs were not created for the children, but that they were employed to do work which the employers had and which the children were qualified to do. The one child who did not obtain employment was not qualified to do any work for which there was a vacancy at the time of her application. The granting of scholarship awards to children of employees was not conditioned upon any requirement that the children apply for employment by or enter the employment of any of the participating companies or anyone else either during school vacation periods or upon graduation. Nor were the awards to children conditioned upon a requirement that their parents *282 remain in the service of their employer or employers. Except for a determination that the Foundation should be organized for educational and charitable purposes, the particular activity in which the Foundation should engage had not been decided upon prior to the Foundation's incorporation in December 1951. During 1952 and 1953 William Chase and the other trustees of the Foundation considered the question of what might be the most suitable activity for the Foundation to engage in in view of the funds which it had received and which it might reasonably expect to receive. In 1954 the trustees decided that a scholarship and loan program constituted the most suitable activity for the Foundation in view of its present and prospective resources and later in that year adopted the program here involved. Plans and procedures for launching and operating the program were formulated and adopted and in the summer of 1955 the Foundation began making scholarship awards. Subsequent scholarship awards were made in 1956 and 1957 during which years the methods and procedures of operating the Foundation underwent revision and improvement. Although there was an interval of approximately 3 1/2 years between *283 the incorporation of the Foundation and the time it first made awards of scholarships, the delay was not due, as respondent suggests, to a lack of good faith on the part of the trustees but was due to their caution and to their desire to select and set up a sound program for the Foundation which in the light of the Foundation's present and prospective resources would be productive of the greatest benefit. It also is true that during the period from the Foundation's incorporation until it began making awards there was an accumulation of funds, but the mere holding and accumulation of funds for charitable or educational purposes does not disqualify an organization for treatment as a charitable or educational organization. Ohio Furnace Co., 25 T.C. 179; Fred Draper, 32 T.C. 545. The Foundation's program as adopted in 1954 and with changes made therein subsequently in that year provided that those eligible to apply to the Foundation for scholarships or loans were (1) natural, adopted or stepchildren of employees of the participating companies, (2) employees of participating companies, and (3) at the discretion of the scholarship committee deserving "outsiders" *284 who could establish that they had completed the required amount of schooling to compete with the other students. Under the program the foregoing three groups continued to be eligible to make application for scholarships or loans until September 16, 1957, when, in an attempt to remove what respondent had indicated was the basis upon which he rested his ruling of April 8, 1957, in which he denied exemption to the Foundation, the trustees amended the program so as to eliminate employees of participating companies from the groups eligible to apply for scholarships or loans. Consequently no awards have been made to employees of the participating companies since September 16, 1957. Due to the lack of a final determination as to whether it is exempt from Federal income tax and its failure by reason of such lack to receive some contributions it might otherwise have received, the Foundation has not engaged in any program to inform "outsiders" of their eligibility to apply for awards and has not solicited them to make application therefor. Consequently it has not received any applications from nor made an award to any "outsider." The parties herein are in agreement, and we think correctly *285 so, that the action of the trustees of the Foundation at their special meeting on September 16, 1957, in adopting a resolution reciting that the Foundation's program was amended in various respects as of March 1, 1954, was ineffective for altering the Foundation's status as it had existed in previous years. The fact that awards have been made only to employees and children of employees of the participating companies without having been made available without discrimination to all members of the Detroit community where the Foundation operates, does not afford a basis for holding that the Foundation was not organized and operated exclusively for charitable or educational purposes. Gimbel v. Commissioner, 54 F. 2d 780, which reversed 20 B.T.A. 213, involved the question of whether Gimbel Brothers' Foundation of Philadelphia was a foundation organized and operated exclusively for charitable and educational purposes within the meaning of section 231 of the Revenue Act of 1924, which provided that - "Corporations, and any * * * foundation, organized and operated exclusively for * * * charitable * * * or educational purposes * * *, no part of the net earnings of *286 which inures to the benefit of any private shareholder or individual; * * *"
should be exempt from Federal income tax. The benefits provided by the Foundation were limited solely to the employees of Gimbel Brothers, Incorporated, of Philadelphia. Among the benefits provided by the Foundation were the giving of relief to the employees of Gimbel Brothers, Incorporated, and the awarding to employees of that corporation scholarships for study "in institutions giving business and technical education." The Court of Appeals held there that the Foundation was exempt from tax and that contributions made thereto constituted allowable deductions by the contributors. Other cases of similar import are John R. Sibley et al., Executors, 16 B.T.A. 915; T. J. Moss Tie Co., 18 T.C. 188, aff'd 201 F. 2d 512. Cf. Estate of Leonard O. Carlson, 21 T.C. 291. In the last two of the foregoing cases, the decision of the Court of Appeals in the Gimbel case was cited with approval by this Court. We are satisfied that The William B. Chase Foundation was organized and operated exclusively for charitable or educational purposes during the period from *287 its incorporation in December 1951 through its taxable year ended November 30, 1956, the period involved herein. The sole object of the Foundation was to accept, hold, administer, invest, and disburse its funds for educational and charitable purposes. Accordingly, we hold that for its fiscal years ended November 30, 1952, and November 30, 1953, the Foundation was exempt from income tax under the provisions of section 101(6) of the 1939 Code and for its fiscal years ended November 30, 1954, through November 30, 1956, was exempt from income tax under the provisions of section 501(c)(3) of the 1954 Code. Having held that the Foundation qualifies for exemption from income tax under the above-mentioned sections of the Codes for its fiscal years above indicated, we further hold that it qualifies as a corporation or foundation contributions to which were deductible by individuals under section 23(o) of the 1939 Code for the years 1951 through 1953 and under section 170(a) and (c) of the 1954 Code for the years 1954 and 1955, and contributions to which were deductible by corporations under section 23(q) of the 1939 Code for the years 1951 through 1953. Accordingly, we hold that the contributions *288 made to the Foundation by the individual petitioners during their taxable years involved herein and the contributions made to the Foundation by the corporations, Shatterproof Glass Corporation, Consolidated Broach Company, and Production Tool and Die Company, Inc., during their fiscal year ended October 31, 1952, constituted allowable deductions as contributions to the extent of the percentages permitted by the Codes. In their income tax returns for their fiscal year ended October 31, 1953, Automotive Gear Company and Consolidated Broach Company deducts as contributions the amounts of $2,400 and $1,600, respectively. The foregoing amounts were not paid during the fiscal year ended October 31, 1953, but the amount in each case was paid by check dated January 14, 1954. Since the foregoing petitioners reported their income on an accrual basis and did not pay the contributions in question during their fiscal year ended October 31, 1953, but paid them before the 15th day of the third month following the close of the year ended October 31, 1953, the contributions constituted allowable deductions for the year ended October 31, 1953, under section 23(q) of the Code only if during the year *289 ended October 31, 1953, the board of directors of the respective corporations authorized the respective contributions. The only controversy between the parties as to the deductibility of the contributions is as to whether and when the contributions were authorized by the respective boards of directors. Concededly there is no record of any formal action by the board of directors in either case. In Faucette Co., 17 T.C. 187, we held that oral authorization by the directors was sufficient to meet the requirements of the Code respecting authorization and allowed the contributions there involved upon a showing by the taxpayer that the contributions were orally authorized by the directors of the taxpayer during the taxable years for which the contributions were taken as deductions. Such a showing is lacking here. All we have been shown is when the contributions were paid and the fact that deductions therefor were taken in the returns of the petitioners for their taxable year in question. Recognizing that this is not a sufficient factual basis upon which to hold that the deductions are allowable, the petitioners contend that we should assume that such actions were taken on the *290 informal authorization of the directors of the respective corporations. If it be assumed that the directors informally authorized the payment of the contributions and the taking of deductions therefor for the years in question, the record is still silent as to when such authorization occurred. The respondent's disallowance of deductions for the contributions in question is for that reason sustained. Decisions will be entered under Rule 50. Footnotes
1. The cases of the following petitioners were consolidated herewith: Patricia C. Hartmann, Docket Nos. 57803, 58810; Automotive Gear Company, Docket No. 67948; Shatterproof Glass Corporation, Docket No. 67950; Consolidated Broach Company (formerly Michigan Broach Company), Docket No. 67951; Production Tool and Die Company, Inc., Docket No. 67955; William B. Chase and Estate of Pearl Jane Chase, deceased, William B. Chase, executor, Docket No. 70234; and Charles Yarbrough and Mildred Yarbrough, Docket No. 72700.↩
1. Added April 2, 1956.↩
1. Includes 318 shares common stock of Citizens Utilities Company with fair market value of $4,213.50 which were received on December 31, 1952, and sold on April 30, 1954.↩